IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRI-STATES UTILITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:09-CV-03388-DGK |
| | ) | |
| INFINITY METERING COMPANY, INC., | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

This case arises from a lease purchase agreement between Plaintiff Tri-States Utility, Inc. ("Tri-States"), and Old National Bank ("Old National"). Old National financed the purchase of Automatic Read Water Meters for Tri-States. After discovering the meters were defective, Tri-States stopped making lease payments.

Presently before the Court is Defendant Old National Bank's Motion for Summary Judgment Against Plaintiff Tri-States Utility, Inc. on Count D of Plaintiff's Complaint (doc. 170) and Defendant Old National Bank's Motion for Summary Judgment Against Plaintiff Tri States Utility, Inc. on Old National Bank's Counterclaim (doc. 172). Defendant Old National argues that it fulfilled its duties under the lease purchase agreement with Tri-States, and therefore (1) Tri-States is not entitled to relief under Count D, and (2) Old National is entitled to summary judgment on its breach of contract counterclaim.

The motions are respectively GRANTED and GRANTED IN PART. Old National is granted summary judgment on Count D of the Plaintiff's Complaint and on the issue of liability on its breach of contract counterclaim. The amount of damages on the counterclaim will be determined after the Court receives additional briefing from the parties.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

## Facts[1]

Viewing the evidence in the light most favorable to Tri-States, the non-moving party, the Court finds the facts to be as follows for purposes of resolving the pending summary judgment

---

[1] Unfortunately, both parties have failed to observe Rule 56.1's directive that each fact be set forth in a separately numbered paragraph. Although ordinarily this might preclude the Court from determining what the facts are, the facts in this case are straightforward and largely uncontroverted, consequently the Court will overlook both parties failure to observe this portion of the rule.

2

motions. The Court has omitted properly controverted facts,[2] facts not properly supported by the record, facts immaterial to the resolution of the pending motion, and argument presented as a fact.

In 2006, Tri-States purchased equipment from Defendant Water Products of Oklahoma, Inc. To finance the purchase, Tri-States entered into the Lease Purchase Agreement dated October 20, 2006 ("the Agreement") with First Security Leasing, Inc. Shortly thereafter, First Security Leasing assigned all rights, title, and interest in this agreement to Old National in accordance with paragraph 17 of the Agreement. The Agreement provided that the Lessor was to "acquire the Equipment" selected by Tri-State "from the Vendor" selected by Tri-State, and sell this Equipment to Tri-State.

The Agreement contains the following relevant sections:

**1.** **Definitions:**

"Equipment" . . . . It is specifically agreed that the Equipment constitutes equipment ordered by Lessee pursuant to the Purchase Order.

**2.** **Agreement to Acquire Equipment:** Upon selection of the Vender and the Equipment by Lessee, Lessor hereby agrees to acquire the Equipment from the Vendor and Sell to Lessee, . . . the Equipment . . . . It is acknowledged and agreed that this Agreement relates only to the financing and acquisition of the Equipment. . . .

**7.** **Delivery and Installation:** Lessee shall select the type, quantity and Vendor of each item of Equipment designated in Exhibit A hereto. . . . Execution of the Acceptance Certificate by the appropriate individual as indicated in Lessee's Purchase Order shall constitute acceptance of the Equipment on behalf of the Lessee. . . .

Lessee understands and agrees that this Agreement relates to financing the Equipment only . . . .

---

[2] Local Rule 56.1 provides that "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." Although Plaintiff suggests there are disputed issues of fact, it does not specifically controvert most of the facts alleged in Old National's statement of facts, thus the uncontroverted facts are deemed admitted.

> **8. DISCLAIMER OF WARRANTIES:** LESSOR, NOT BEING THE MANUFACTURER, SELLER OR SUPPLIER OF ANY OF THE EQUIPMENT, NOR A DEALER IN ANY OF SUCH EQUIPMENT, HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY, REPRESENTATION OR COVENANT, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR FITNESS FOR THE USE CONTEMPLATED BY THE LESSEE. LESSEE ACCORDINGLY AGREES THEREON. . . . LESSOR SHALL HAVE NO OBLIGATION TO INSTALL, ERECT, TEST, ADJUST, SERVICE, OR MAINTAIN ANY EQUIPMENT. LESSEE SHALL LOOK SOLELY TO THE MANUFACTURER, SELLER, AND/OR SUPPLIER FOR ANY AND ALL CLAIMS RELATED TO THE EQUIPMENT. LESSEE LEASES THE EQUIPMENT "AS IS, WHERE IS" AND "WITH ALL FAULTS."

Tri-States acknowledged that the Lessor made no representations as to the Equipment. Tri-states also accepted the Equipment "as satisfactory in all respects for purposes of [the] Agreement." Ex. C.

After receiving and installing the equipment, Tri-States discovered significant defects within the equipment that existed at the time of delivery. Tri-States first defaulted on its lease payments on February 1, 2009, and continues to be in default despite demands by Old National.[3] Tri-State brought the current action, seeking restitution for damages acquired in connection with the purchase of the allegedly faulty equipment. Old National counterclaimed, seeking damages for Tri-States' alleged breach of contract.

## Discussion

A federal court exercising its diversity jurisdiction applies the choice of law rules of the state wherein it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). This Court sits in Missouri, and under Missouri law a choice of law provision in a contract is enforceable unless application of the provision is "contrary to a fundamental policy of Missouri."

---

[3] Although Old National failed to state this fact in the facts section of its brief in support of the motion for summary judgment on its counterclaim, this fact is clearly supported by the record, Clay Sills Affidavit at ¶¶ 8-9, and is not controverted by Tri-States. Consequently, the Court accepts the assertion as a fact.

*Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009) (quoting *Kagan v. Master Home Prods., Ltd.*, 193 S.W.3d 401, 407 (Mo. Ct. App. 2006)).  In the present case, paragraph 21 of the Lease states that it shall be "governed by and construed in accordance" with the laws of Missouri.  There has been no suggestion that application of this provision is contrary to Missouri policy, therefore Missouri law will apply in construing the Agreement and adjudicating the breach of contract counterclaim.  "Under Missouri law, summary judgment in a contract case is appropriate only where the contract language is so clear and unambiguous that the contract's meaning is readily apparent from the face of the document itself."  *Al-Khaldiya Electronics & Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754, 757 (8th Cir. 2009).

**A.     Old National did not breach an implied duty of good faith and fair dealing.**

"Missouri law implies a covenant of good faith and fair dealing in every contract." *Farmers' Elec. Coop. v. Mo. Dept. of Corr.*, 977 S.W.2d 266, 271 (Mo. 1998) (citations omitted).  This implied duty or covenant exists to prevent a party from evading the spirit of the transaction and denying another party "the expected benefit of the contract."  *Countrywide Services Corp. v. SIA Ins. Co.*, 235 F.3d 390, 393 (8th Cir. 2000) (quotation omitted).

Tri-states contends the contract between the parties was for both the financing and acquisition of the equipment, and that Old National breached its duty by acquiring defective equipment.  In support of its position, Tri-States notes the Agreement states that the contract "relates only to the financing and acquisition of the Equipment." ¶ 2.  However, the Agreement also states that the "Lessee understands and agrees that this Agreement relates to financing the Equipment only." ¶ 7.  This is clearer when the acquisition arrangement is understood in its entirety.  Tri-States selected the specific equipment it wanted and the vender that should be used to purchase it.  Old National fulfilled its duty by acquiring the equipment identified by Tri-States

5

in Exhibit A of the Agreement. Read as a whole, nothing in the Agreement suggests that Old National is responsible for the quality of the equipment or anything other than the proper acquisition and financing of the requested goods. To the contrary, the Agreement expressly states that Old National is not obligated to "install, erect, test, adjust, service, or maintain any Equipment" and that the equipment is accepted "'as is, where is' and 'with all faults.'" ¶ 8. The "expected benefit" Tri-States received from the Agreement, was financing and acquisition of the equipment ordered *by Tri-States*, no more, no less.

Old National had neither the discretion in the choice of the equipment nor any duty to inspect the equipment prior to delivery. Fundamentally the relationship between these parties is one of financing, not water meter dealing. Old National was under no obligation to acquire non-defective equipment, and therefore Old National did not breach an implied duty of good faith and fair dealing.

Accordingly, Old National's motion for summary judgment regarding Count D of the Complaint is granted.

**B.     Old National is entitled to summary judgment on its counterclaim.**

Old National's counterclaim accuses Tri-States of failing to fulfill its obligation under the Agreement. "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). A lease contract such as the Lease Purchase Agreement between the parties "is effective and enforceable according to its terms between the parties, against purchasers of the goods and against creditors of the parties." Mo. Rev. Stat. § 400.2A-301. Such finance lease contracts make the lessee's

promises under the contract "irrevocable and independent upon the lessee's acceptance of the goods" and are then "not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs." Mo. Rev. Stat. § 400.2A-407.

Here, the Agreement clearly established a contract with clear terms. As stated above, Old National performed its obligations to finance, acquire, and deliver the equipment ordered by Tri-States, and Tri-States failed to fulfill its promise of making all of the lease payments on time. This obligation was not tolled by its claim of defective equipment. Nothing in the Agreement allows for such tolling of Tri-States's obligations; in fact the Agreement states that the "obligation to pay all Lease Payments hereunder shall be absolute and unconditional under any and all circumstances subject to the terms and conditions of this Agreement." ¶ 14. Failure to make the requisite payments is an "Event of Default" under the Agreement. ¶ 15. The Agreement provides that because of the default, Old National is allowed to "[a]ccelerate and consider as immediately due and payable all obligations of every nature owed by Lessee hereunder," and receive costs and expenses including attorney's fees incurred in enforcement of the Agreement. ¶ 16. Accordingly, Old National is entitled to summary judgment with respect to Tri-States' liability on the counterclaim.

Old National asserts its damages are $968,672.10[4] plus interest of 10% per annum from November 19, 2009. Tri-States has not controverted these figures, but the Court declines to award a specific amount of damages at this time because the existing record is insufficient. Old National's request for $6,157.70 in late fees, for example, is conclusory and does not set forth the facts necessary to determine the accuracy of this calculation. Similarly, Old National's request

---

[4] This is the sum of the "damages of $948,288.11, late fees of $6,157.70, [and] reasonable attorney's fees of $14,226.29" requested by Old National. Motion (doc. 172) at ¶ 7.

7

for reasonable attorneys' fees is not supported by the existing record. The affidavit from attorney Douglas Evans only states "I charged $14,226.29 for the professional services and expenses I provided to Old National Bank to date," and "That $14,226.29 is a fair and reasonable charge for the services I provided at the time and place that the services were rendered." The Court would like Defendant to file additional information explaining how many hours were spent on this case, what the expenses were, and whether Old National has actually paid the amount it is claiming for reimbursement.

Accordingly, the Court partially grants Old Nationals' motion for summary judgment on the counterclaim by finding that Tri-States failed to perform its obligations under the Agreement, which is an Event of Default under the Agreement, and the Court directs Old National to provide additional information supporting its requested damages. Old National shall file a supplemental brief with the Court providing this information on or before July 8, 2011. Tri-States will then have 14 days to file a brief in response. If Tri-States files such a brief, Old National shall have 14 days to file a reply brief.

**Conclusion**

Defendant Old National's Motion for Summary Judgment on Count D of Plaintiff's Complaint (Doc. 170) is GRANTED and its Motion for Summary Judgment on its Counterclaim is GRANTED IN PART. Old National shall submit supplemental briefing on the issue of damages as directed above.

**IT IS SO ORDERED.**

Date: July 5, 2011　　　　　　　　　　　　　/s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT